**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Virginia R. Morgan and David A. Vivaldo,) | |
| Plaintiffs, | No. CIV 16-498-TUC-CKJ |
| vs. | **ORDER** |
| Freightliner of Arizona, LLC, et al., | |
| Defendants. | |

Pending before the Court are the Motion to Dismiss (Doc. 14) filed by Defendants Freightliner of Arizona, LLC; FSWAZ, Ltd.; FAZP, Inc.; FAZF, Inc.; Danny R. Cuzick and Jane Doe Cuzick; and Theril H. Lund and Jane Doe Lund and the Motion to Dismiss (Doc. 15) filed by Defendants Freightliner of Arizona, LLC, Redgate Arizona, LLC, and Redgate Partners, LLC dba Velocity Vehicle Group. Plaintiffs have filed a Combined Response and Opposition to Defendants' Motions to Dismiss (Doc. 18). Defendants have filed Replies (Docs. 21 and 22). Oral argument was presented to the Court on May 22, 2017.

I. *Factual Allegations and Procedural Background*[1]

In a transaction that closed in February 2015, Defendant Freightliner of Arizona, LLC ("Freightliner"), was transferred from Defendants FSWAZ, Ltd. ("FSWAZ"), FAZP, Inc. ("FAZP"), and FAZF, Inc. ("FAZF"), Danny R. Cuzick and Jane Doe Cuzick ("the Cuzicks"), and Theril H. Lund and Jane Doe Lund (the "Lunds") (collectively, "Seller

---

[1]Unless otherwise stated, the facts are taken from the Complaint (Doc. 1).

1  Defendants") to Redgate Arizona, LLC ("Redgate"), Redgate Partners, LLC ("Redgate
2  Partners") (collectively, "Redgate Defendants").  Redgate Defendants' Motion to Dismiss
3  states Freightliner sells and services trucks.  Motion to Dismiss (Doc. 15), p. 3.

4

5  A.  *Employment History and Wage/Fair Labor Standards Act ("FLSA") Allegations*

6          Virginia R. Morgan ("Morgan") began working for Freightliner in February 2013 as
7  a Customer Service Representative ("CSR").  Morgan continues to be an employee of
8  Freightliner.  Morgan is a female and, at all relevant times, has been over the age of 40.
9  David A. Vivaldo ("Vivaldo") began working for Freightliner in January 2014 as a CSR.
10  In May 2015 Freightliner, citing budgetary and over-staffing concerns, terminated Vivaldo's
11  employment.  Vivaldo is a Hispanic male of Mexican ancestry.

12          As CSRs, Morgan and Vivaldo's duties included "greeting customers, advising them
13  in connection with their service needs, coordinating warranty repairs, and serving as the
14  interface between the customer and the actual performance of mechanic labor on a vehicle."
15  Complaint (Doc. 1), ¶ 25.  "During the vast majority of Plaintiffs' work time during the
16  relevant periods, Plaintiffs did not engage in the sales or servicing of parts or vehicles. . .
17  Plaintiffs spent most of their time relaying information to and from clients and on paperwork
18  and recordkeeping."  *Id*. at ¶42.

19          Morgan, almost without exception, worked in excess of 40 hours per workweek from
20  February 2013 through June 2015.  Morgan did not receive wages for all hours worked and
21  was not paid a rate at or above the Arizona and/or federal minimum wages, and/or did not
22  receive overtime compensation as required by federal law.  Vivaldo, almost without
23  exception, worked in excess of 40 hours per workweek from January 2014 through May
24  2015.  Vivaldo did not receive wages for all hours worked and was not paid a rate at or
25  above the Arizona and/or federal minimum wages, and/or did not receive overtime
26  compensation as required by federal law.

27          At all times relevant, Freightliner classified Morgan and Vivaldo as exempt from the
28  overtime pay requirements of the FLSA.

B. *Allegations Regarding Discrimination and Retaliation Against and Resulting Emotional and Physical Distress of Morgan*

"At all times relevant, Morgan has been a hardworking, exemplary employee[,]" *Id.* at ¶ 46, and customers and fellow employees regularly praise her job performance. However, "[c]ertain Freightliner employees . . . , with the knowledge and acquiescence of Freightliner management, acted abusively and in a manner inconsistent with what should be tolerated in a modern workplace." *Id.* at 47.

Supervisor Joshua Lomeli ("Lomeli") provided Morgan with inaccurate, unfair reviews of her performance that negatively affected her pay. Lomeli assigned Morgan to night and weekend shifts where she would receive no assistance to perform her work. However, Lomeli assigned younger (under 40) males more desirable shifts, were given assistance during such shifts, and were constantly praised and rewarded for lesser and inferior work performance.

Lomeli required Morgan to perform inordinate amounts of work, sometimes over 80 hours per workweek. Younger male counterparts who worked much less and were less productive received a greater rate of pay and greater total pay than Morgan.

Lomeli's authority to fire Morgan, supervise Morgan, control Morgans' work schedule and conditions of employment, determine her rate of pay, maintain employment-related records on Morgan provided Lomeli with economic control or control over the nature and structure of the employment relationship between Freightliner and Morgan.

At various times, Morgan asked Lomeli, one on one and during staff meetings, to explain why she would receive less desirable shifts, more work, more scrutiny, and less pay than her younger, male counterparts. Lomeli would typically respond by telling Morgan to "shut up" and to not to bring up such issues. *Id.* at 61. Whenever Morgan would attempt to obtain information regarding her pay or status and/or make her work circumstances better, Lomeli would expose her to even greater scrutiny and give her more work.

Morgan attempted to report Lomeli's conduct and her unfair work conditions to

1    Freightliner's human resources personnel. Morgan's attempts to contact Freightliner's

2    director of human resources, Gordon Evans, was not successful.

3        While Lomeli was the supervisor, Matthew Davidson ("Davidson"), a Freightliner

4    foreman and friend of Lomeli's, often made improper comments of an unwelcome, sexual,

5    and harassing nature that were outrageous and specifically calculated to embarrass/harm

6    Morgan and marginalize her in the workplace.  Examples of the conduct are provided in the

7    Complaint.  *See e.g.* Complaint, ¶¶ 65-67.  Freightliner had not provided any non-

8    discrimination/equal employment opportunity training to Plaintiffs or their coworkers at

9    Freightliner's Tucson facility when Davidson made the comments.  Morgan made attempts

10   to report this conduct to Freightliner human resources personnel, but Freightliner failed to

11   address the issues until counsel for Morgan demanded Freightliner remedy the situation.

12       Plaintiffs allege the discrimination against Morgan was due to sex and age.

13       As a result of the work environment and the circumstances created by Freightliner,

14   Morgan suffered anxiety attacks (accompanied by rapid heart rate, profuse perspiration, and

15   uncontrollable shaking), insomnia, headaches, and depression.  This includes the stress

16   caused by the unfair pressure to perform at high levels (which was not placed on her

17   younger, male colleagues) and the long hours she worked (which her younger, male

18   colleagues did not have to work).  Morgan suffered various adverse physical symptoms

19   including, without limit, vomiting, stomach cramps, diarrhea, transient appetite, and unusual

20   menstrual discharge/cramps.

21

22   C. *Allegations Regarding Discrimination and Retaliation Against and Resulting Emotional and Physical Distress of Vivaldo*

23

24       "[A]t all times relevant, Vivaldo was a hardworking, exemplary employee." *Id*. at

25   74.  Customers and fellow employees regularly praised his job performance.

26       Lomeli gave Vivaldo less desirable shifts, no assistance, a bigger work load, and

27   significantly more work hours with less pay than his counterparts who were not members

28   of any protected class, or no pay at all.  Lomeli's authority over Vivaldo provided Lomeli

1   with economic control or control over the nature and structure of the employment
2   relationship between Freightliner and Vivaldo.

3          Plaintiffs allege the discrimination against Vivaldo was due to his race, color, and/or
4   national origin.  In contrast, Freightliner and Lomeli treated white and other than Hispanic-
5   origin employees more favorably by providing them with more favorable working
6   conditions such as better shifts and assistance from other employees.

7          Because of the discrimination perpetrated primarily by Lomeli, Vivaldo received less
8   pay, if any, for certain work than his counterparts that were not part of any protected class.

9          Despite Vivaldo's excellent work, Freightliner terminated Vivaldo's employment in
10   May 2015 citing supposed budgetary and over-staffing concerns.  A non-Hispanic male was
11   hired to fill Vivaldo's position.

12          Freightliner's failure to train against and prevent the work environment created by
13   Freightliner and its employees, and its termination of Vivaldo's employment have caused
14   substantial financial loss and significant emotional and physical distress to Vivaldo.  As a
15   result of the work environment and the circumstances created by Freightliner, Vivaldo
16   suffered extreme depression, anxiety and nervousness, and insomnia. Freightliner providing
17   the race-based unfair treatment, the racially-motivated outrageous termination of his
18   employment despite his excellent work, and the long hours he worked under inordinate
19   pressure caused Vivaldo to suffer various adverse physical symptoms including, without
20   limit, body aches, fatigue, insomnia, headaches, vomiting, diarrhea, and transient appetite.

21

22   D.  *Tolling Agreement*

23          The parties have entered into a Second Tolling Agreement with an effective date of
24   April 22, 2016 (the "Tolling Agreement").  Among other things, the parties agreed that any
25   and all claims filed by Plaintiffs between July 15, 2016, and July 31, 2016, would be
26   considered timely and that the defending parties would not "assert a laches defense or any
27   other time-based doctrine or defense, rule, or statute, that could limit the [Plaintiffs'] right
28   to assert, preserve, and or prosecute any of the Claims [as defined]."  Complaint, ¶89.

E. *Litigation*

Morgan filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a notice of right to sue on June 27, 2016. *Id*. at ¶ 36. Vivaldo filed a charge of discrimination and received a notice of right to sue on June 24, 2016. *Id*. at 38.

On July 28, 2016, Plaintiffs filed a Complaint with this Court. Plaintiffs allege claims for the following:

    a.  Count I – Fair Labor Standards Act

    b.  Count II – Title VII / Arizona Civil Rights Act

    c.  Count III – Equal Pay Act

    d.  Count IV – Age Discrimination in Employment Act / ACRA

    e.  Count V – A.R.S. § 23-355

    f.  Count VI – Arizona Minimum Wage Act

    g.  Count VII – Intentional Infliction of Emotional Distress

On September 9, 2016, Seller Defendants filed a Motion to Dismiss (Doc. 14). Seller Defendants seek dismissal with prejudice of the FLSA claim in Count I, the color discrimination claims in Counts II, V, VI, and VII, the wage claims in Count V, the minimum wage claims in Count VI, and the intentional infliction of emotional distress claims in Count VII. Seller Defendants also seek dismissal with prejudice of the Cuzicks, the Lunds, FSWAZ, FAZP, and FAZF. Also on September 9, 2016, the Redgate Defendants filed a Motion to Dismiss (Doc. 15). The Redgate Defendants join in and adopt the Seller Defendants' Motion to Dismiss. Additionally, the Redgate Defendants seek dismissal of Redgate and Redgate Partners.

Plaintiffs filed a Response to the Motions to Dismiss on October 12, 2016; Seller Defendants and Redgate Defendants each filed a Reply on November 7, 2016.

On January 10, 2017, Plaintiffs filed a Notice of Filing Supplemental Authority (Doc. 23).

II.    *Complaint and Plausibility Pleading Standard*

A complaint is to contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed.R.Civ.P. 8(a). Nonetheless, a complaint must set forth a set of facts that serves to put defendants on notice as to the nature and basis of the claim(s).

The United States Supreme Court has found that a plaintiff must allege "enough facts to state a claim to relief that is plausible on its facts." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a complaint need not plead "detailed factual allegations," the factual allegations it does include "must be enough to raise a right to relief above the speculative level." *Id*. at 555; *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss[.]"). Indeed, Fed.R.Civ.P. 8(a)(2) requires a showing that a plaintiff is entitled to relief "rather than a blanket assertion" of entitlement to relief. *Id*. at 1965 n. 3. The complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right to action." *Id*. at 1965.

The Court also considers that the Supreme Court has cited *Twombly* for the traditional proposition that "[s]pecific facts are not necessary [for a pleading that satisfies Rule 8(a)(2)]; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardue*, 551 U.S. 89, 93(2007). Indeed, *Twombly* requires "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.*" *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2nd Cir. 2007); *see also Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009) (for a complaint to survive a motion to dismiss, the non-conclusory "factual content," and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief).

When a court is considering a motion to dismiss, allegations that are mere conclusion

1    are not entitled to the assumption of truth if unsupported by factual allegations that allow

2    the court "to draw the reasonable inference that the defendant is liable for the misconduct

3    alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009).  This Court must take as true all

4    allegations of material fact and construe them in the light most favorable to Plaintiffs.  *See*

5    *Cervantes v. United States*, 330 F.3d 1186, 1187 (9th Cir.  2003).  In general, a complaint

6    is construed favorably to the pleader.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct.

7    1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds*, 457 U.S. 800.  Nonetheless, the

8    Court does not accept as true unreasonable inferences or conclusory legal allegations cast

9    in the form of factual allegations.  *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th

10   Cir. 1981).

11       If a court determines that dismissal is appropriate, a plaintiff must be given at least

12   one chance to amend a complaint when a more carefully drafted complaint *might* state a

13   claim.  *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991).  Moreover, when dismissing with

14   leave to amend, a court is to provide reasons for the dismissal so a plaintiff can make an

15   intelligent decision whether to file an amended complaint.  *See Bonanno v. Thomas*, 309

16   F.2d 320 (9th Cir. 1962); *Eldridge v. Block*, 832 F.2d 1132 (9th Cir. 1987).

17

18   III.  *Count I – Fair Labor Standards Act*

19       Seller Defendants assert Plaintiffs, as CSRs, are exempt services advisors under the

20   FLSA.  The Ninth Circuit Court of Appeals has recently addressed the issues raised by the

21   parties as to this claim in *Navarro v. Encino Motorcars, LLC*, 845 F3d 925 (9th Cir. 2017);

22   *see also Encino Motorcars, LLC v. Navarro*, — U.S. —, 136 S. Ct. 2117, 2127, 195 L. Ed.

23   2d 382 (2016).  Under this authority, dismissal of the FLSA claim is not appropriate.  As

24   discussed with counsel during oral argument and in light of the pending Petition for Writ

25   of Certiorari before the United States Supreme Court, the Court will deny with leave to

26   resubmit the request for dismissal of this claim.

27

28

IV. *Counts II, V, VI, and VII – Color Discrimination Claims*

The parties have not cited to any Ninth Circuit cases that address the issue of sufficient factual allegations as to color as opposed to race or national origin. Another district court has stated:

> [T]he Court finds *Cooper v. Jackson-Madison Co. Gen. Hosp. Dist.*, 742 F.Supp.2d 941 (W.D.Tenn. 2010), to be highly persuasive in regard to this question. Like Plaintiff did here, the *Cooper* plaintiff brought claims in federal court against his employer for both race and color discrimination. *Cooper*, 742 F.Supp.2d at 945. Also like Plaintiff did here, the *Cooper* plaintiff checked the box for race discrimination on his EEOC charge, but left the box for color discrimination blank. *Id*. at 949; (Mot. to Dism. Ex. 1). Moreover, the EEOC charge in this case and that in *Cooper* contained strikingly similar language describing the alleged discriminatory acts. *See* (Mot. to Dism. Ex. 1) ("Respondent discriminated against me because of my race, Black."); *Cooper*, 742 F.Supp.2d at 945 ("Plaintiff alleged that he 'was discriminated against . . . because of [his] race, White.").
>
> The *Cooper* court, relying in part on an EEOC compliance manual, explained the difference between race and color discrimination, stating that color discrimination "arises when the particular hue of the plaintiff's skin is the cause of the discrimination, such as in the case where a dark-colored African-American individual is discriminated against in favor of a light-colored African-American individual." *Cooper*, 742 F.Supp.2d at 950-51. As the "thrust" of the *Cooper* plaintiff's EEOC charge was that he was discriminated against "because of his Caucasian race," and the allegations in his charge "[did] not suggest that he was discriminated against because he was, for example, a fair-skinned Caucasian," the court found that the plaintiff had only exhausted his administrative remedies as to the race discrimination claim, but not as to the color discrimination claim. *Id*.
>
> Plaintiff's EEOC charge here is similarly devoid of allegations of discrimination based on his skin tone, and like the *Cooper* plaintiff, the basis of Plaintiff's EEOC charge was that he was discriminated against because of his race. *See* (Mot. to Dism. Ex. 1–2). Because Plaintiff's EEOC charge contains no allegations that that would allow the EEOC to infer and investigate a claim of color discrimination, Plaintiff's color discrimination claim is not like or reasonably related to his EEOC charge. Plaintiff, therefore, has failed to exhaust his administrative remedies as to the color discrimination claim, and the Court lacks subject-matter jurisdiction over the claim. Accordingly, the color discrimination claim will be dismissed.

*Richardson v. HRHH Gaming Senior Mezz, LLC*, 99 F. Supp. 3d 1267, 1273-74 (D. Nev. 2015); *see also Gill v. Bank of Am. Corp.*, No. 2:15-CV-319-FTM-38CM, 2015 WL 4349935, at *1 (M.D. Fla. July 14, 2015).

In this case, the Charge of Discrimination made by Vivaldo is similar to those in

1    *Cooper* and *Richardson*.[2]   Vivaldo did not check the "color" box.  Vivaldo's narrative

2    portion of the Charge of Discrimination states:

3       **III.   DISCRIMINATION STATEMENT:**  I believe Respondent discriminated
         against met because of my race, national origin, Mexican, and because I
4        opposed a practice made unlawful under the Arizona Civil Rights Act, as
         amended, and Title VII of the Civil Rights Act of 1964, as amended.  The
5        particulars are:

6       **A.**   In or about February, 2014, I was hired as a Service Advisor/Customer
                 Service Representative.   Service Manager Josh Lomeli is my
7                supervisor.

8       **B.**   In or about March, 2014 I learned that I was being paid less than my
                 similarly situated co-workers who are not of Mexican national origin.
9
        **C.**   On or about March 14, 2015, I asked Lomeli about the difference
10               between my pay and that of my co-workers who are not of Mexican
                 national origin.  Lomeli instructed me to not raise the issue again, did
11               not address my concerns, and I was subsequently assigned less
                 desirable shifts.
12
        **D.**   On or about May 19, 2015 I was laid-off allegedly because Respondent
13               had too many Customer Service Representative.

14      **E.**   I believe that despite Respondent's claims of overstaffing, I was
                 replaced by a non-Hispanic male.
15
        **F.**   I believe and therefore allege that but for my national origin, Mexican,
16               I would not be paid less than my similarly situated co-workers who are
                 not of Mexican national origin.  I further believe and therefore allege
17               that but for my national origin and having complained of
                 discriminatory treatment, I would not have been assigned less desirable
18               shifts and laid-off.

19    Charge of Discrimination (Doc. 14), pp. 14-15.

20           Additionally, the allegations in the Complaint focus on Vivaldo's race and national

21    origin.   The Complaint states:   "Vivaldo is a Hispanic male of Mexican ancestry."

22    _____

23           [2]The Court considers the Charge of Discrimination as it is referred to in the Complaint
      and provides the basis for subject matter jurisdiction. *See United States v. Ritchie*, 342 F.3d
24    903, 908 (9th Cir. 2003) (holding that "[e]ven if a document is not attached to a complaint,
      it may be incorporated by reference into a complaint if the plaintiff refers extensively to the
25    document or the document forms the basis of the plaintiff's claim"); *Branch v. Tunnell*, 14
      F.3d 449, 454 (9th Cir. 1994) (overruled on other grounds by *Galbraith v. Cnty. of Santa*
26    *Clara*, 307 F.3d 1119 (9th Cir. 2002) ("documents whose contents are alleged in a complaint
      and whose authenticity no party questions, but which are not physically attached to the
27    pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss.").

28

1   Complaint (Doc. 1), ¶ 75; "Vivaldo is Hispanic and of Mexican descent . . . " *Id*. at ¶ 122;

2   Vivaldo is "a Hispanic man of Mexican descent[.]??" *Id*. at ¶ 133.  Indeed, the Complaint

3   does not include any non-conclusory factual allegations as to Vivaldo's color.

4           Vivaldo's Charge of Discrimination does not contain any allegations that would have

5   provided the EEOC an opportunity to infer and investigate a claim of color discrimination.

6   Rather, his color discrimination claim is not like or reasonably related to his Charge of

7   Discrimination.  The Court finds Vivaldo has failed to exhaust his administrative remedies

8   as to the color discrimination claims.  The Court lacks subject-matter jurisdiction over the

9   color claims and the Motions to Dismiss will be granted as to these claims.

10

11   V.  *Counts V and VI – A.R.S. § 23-355 and Minimum Wage*

12          Seller Defendants state, in their reply, that they defer any argument regarding

13   minimum wage until discovery has been completed.  The Court will deny this portion of the

14   Motion to Dismiss with leave to resubmit.

15          However, Seller Defendants continue to assert the claims as to unpaid wages must

16   be dismissed.  Specifically, Seller Defendants assert that, as Defendants are not public

17   employees, they were not required to pay overtime to Plaintiffs. The applicable statutes

18   states:

19          "If an employer, in violation of [Title 23, Chapter 2, Employment Practices and
             Working Conditions], fails to pay wages due any employee, the employee may
20          recover in a civil action against an employer or former employer an amount that is
             treble the amount of the unpaid wages."
21

22   A.R.S. § 23-352. This Arizona law only specifically requires overtime compensation to be

23   made by public employers.  *See* A.R.S. §§ 23-391, 23-392.

24          Nonetheless, Plaintiffs argue in their response that they reasonably expected

25   compensation.  The applicable statute provides for treble damages if "nondiscretionary

26   compensation for labor or services actually performed *and for which the employee had a*

27   *reasonable expectation*," is not paid.  A.R.S. § 23-355 (emphasis added).  Plaintiffs argue

28   they had a reasonable expectation because a reasonable employer would comply with federal

and state laws requiring overtime compensation.  However, Plaintiffs' Complaint includes no such allegations.  Similarly, the Joint Report, which potentially could have clarified Plaintiffs' claims, does not include any such allegations.  Further, the Complaint does not include any other allegation that, e.g., any Defendant had a policy or practice for such compensation, which may have warranted a reasonable expectation.  The Court finds dismissal of the claims for unpaid wages with leave to amend, as it relates to claims for relief other than that contingent upon *Navarro*, is appropriate.

## VI.   *Count VII – Intentional Infliction of Emotional Distress*

For purposes of this Order, the Court accepts the Complaint as stating essentially three intentional infliction of emotional distress claims:

A.  Intentional infliction of emotional distress based on the alleged sex and/or age discrimination against Morgan.

B.  Intentional infliction of emotional distress based on the alleged race and/or national origin discrimination against Vivaldo.

C.  Intentional infliction of emotional distress of both Morgan and Vivaldo based on the alleged failure of Freightliner to adequately train its employees and the alleged failure of Freightliner to take action based on the complaints of Morgan.[3]

To state a claim for intentional infliction of emotional distress, a plaintiff must allege (1) the conduct of defendant was "extreme" and "outrageous," (2) defendant intended to cause emotional distress or recklessly disregarded the near certainty that such conduct would result from his conduct, and (3) severe emotional distress did occur as a result of defendant's conduct.  *Citizen Publishing Co. v. Miller*, 210 Ariz. 513, 517, 115 P.3d 107, 111 (2005); *Wells Fargo Bank v. Arizona Laborers, Teamsters, and Cement Masons Local No. 395*

---

[3]It does not appear Plaintiffs are alleging an intentional infliction of emotional distress claim regarding the FLSA allegations.  Indeed, liability is not appropriate where a defendant "has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress."  *Mintz v. Bell Atlantic Systems Leasing Intern, Inc.*, 183 Ariz. 550, 554, 905 P.2d 559, 563 (Ct. App. 1995).  Defendants arguably had a legal basis to not conclude Plaintiffs were not exempt under the FLSA (e.g., modified regulation that was inconsistent with prior regulations).

1    *Pension Trust Fund*, 201 Ariz. 474, 38 P.3d 12 (2002) (discussing difference between

2    negligent and intentional torts).   A trial court is to act as a gatekeeper to determine whether

3    the alleged actions are "so outrageous in character and so extreme in degree, as to go beyond

4    all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a

5    civilized community[.]"  *Mintz v. Bell Atlantic Systems Leasing Intern, Inc.*, 183 Ariz. 550,

6    54, 905 P.2d 559, 563 (App. 1995); *see also Bodett v. CoxCom, Inc.*, 366 F.3d 736, 747 (9th

7    Cir. 2004).   Additionally, the Court need not determine whether Defendants' conduct was

8    outrageous enough to create liability, only whether reasonable persons could differ as to

9    whether the conduct is "extreme and outrageous."  *Lucchesi v. Stimmell*, 149 Ariz. 76, 79,

10   716 P.2d 1013, 1016 (1986); Restatement (Second) of Torts § 46 (1965), comment h ("It is

11   for the court to determine, in the first instance, whether the defendant's conduct may

12   reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it

13   is necessarily so.  Where reasonable men may differ, it is for the jury, subject to the control

14   of the court, to determine whether, in the particular case, the conduct has been sufficiently

15   extreme and outrageous to result in liability.").

16          Indeed, in *Mintz*, the court stated that it is "extremely rare to find conduct in the

17   employment context that will rise to the level of outrageousness necessary to provide a basis

18   for recovery for the tort of intentional infliction of emotional distress claim.  *Id*.  The acts

19   must be "'so outrageous in character and so extreme in degree, as to go beyond all possible

20   bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized

21   community.'"  *Mintz*, 183 Ariz. at 554, 905 P.3d at 563 (citation omitted); *see also Midas

22   Muffler Shop v. Ellison*, 133 Ariz. 194, 198, 650 P.2d 496, 500 (App. 1982) (liability for

23   intentional infliction of emotional distress does not extend to mere insults, indignities,

24   threats, annoyances, petty oppressions, or other trivialities); *Patton v. First Fed. Savs. &

25   Loan Ass'n of Phoenix*, 118 Ariz. 473, 476, 578 P.2d 152, 155 (1978) (harsh or unfair

26   conduct that falls within the realm of acceptable business practices is not extreme and

27

28

1  outrageous).[4]   Further, the defendant must either intend to cause emotional distress or

2  recklessly disregard the near certainty that such distress will result from his conduct. *Ford*

3  *v. Revlon*, 153 Ariz. 38, 43, 734 P.2d 580 (1987).

4          A case-by-case analysis is necessary because the terms "outrageous conduct" and

5  "severe emotional distress" evade precise legal definition. *Lucchesi v. Stimmell*, 149 Ariz.

6  at 79, 716 P.2d at 1016.  One factor used by courts to analyze these terms is the "position

7  occupied by the defendant." *Id*. (citing Rest 2d Torts § 46 comment e ("Comment e"). That

8  comment states:

9          The extreme and outrageous character of the conduct may arise from an abuse by the
         actor of a position, or a relation with the other, which gives him actual or apparent
10         authority over the other, or power to affect his interests . . . [H]owever, the actor has
         not been held liable for mere insults, indignities, or annoyances that are not extreme
11         or outrageous.

12  Comment e.[5]

13          During oral argument, counsel for Plaintiffs stated that, as to these claims, there are

14  no additional facts that could be added to an amended complaint that would cure any

15  deficiencies.

16

17  A.  *Intentional Infliction of Emotional Distress – Discrimination Against Morgan*

18          In *Coffin v. Safeway, Inc.*, 323 F. Supp. 2d 997, 1003-04 (D. Ariz. 2004), the plaintiff

19  alleged her supervisor had made repeated unwanted sexual overtures, made verbal sexual

20  remarks to her, would caress plaintiff's hands in a sexual manner, and would walk up close

21

22  _____

23          [4]In discussing discrimination claims, the Supreme Court has stated "simple teasing,
    offhand comments, and isolated incidents (unless extremely serious)" are not sufficient to
24  establish a claim. *Clark County School Dist. v. Breeden*, 532 U.S. 268, 271 (2001) (citation
    omitted).

25
          [5]For purposes of this Order and because Defendants have not raised the issue, the
26  Court will assume Davidson's alleged actions were in the scope and course of his
    employment. Therefore, Defendants could be held vicariously liable for intentional infliction
27  of emotional distress if Davidson's conduct was extreme and outrageous. *See e.g. Loos v.
    Lowe's HIW, Inc.*, 796 F. Supp. 2d 1013, 1023 (D. Ariz. 2011).
28

behind her and tell plaintiff he wanted to rub up against her body.  Additionally, the *Coffin* plaintiff alleged that female employees had  complained to the store manager about the supervisor's behavior and that no action was taken to protect female employees.  Noting that the case was at the initial filing stage, rather than in summary judgment proceedings, the *Coffin* court determined plaintiff had adequately alleged a claim for intentional infliction of emotional distress.

In *Thorp v. Home Health Agency-Arizona, Inc.*, 941 F.Supp.2d 1138 (D. Ariz. 2013), the plaintiff alleged that, almost immediately after plaintiff began working for his employer, the employer "made the topic of drug use and abuse, sex and sexual activity, the mockery of religious and moral stances on private issues, and/or the religious and moral choices of the [company's] employees almost daily topics of conversation[.]" 951 F.Supp.2d at 1141. The allegations in *Thorp* were numerous; the Court will mention only those particularly egregious:  the employer's president and director "exclaimed that he didn't want the Mormons and Jehovahs consorting against him;" asked plaintiff "if he would 'do' the office manager if given the opportunity;" talked about how he would "do" the office manager; stated he would have a female co-worker pay him back with sexual favors is she borrowed money; when learning Jehovah's Witnesses do not vote, stated, "Why can't you vote?! It's your f* * *ing right as an American![;]" advised plaintiff that one of the supervisors "goes around f* * *ing humping everything that moves[;]" "ordered all employees into an office to watch a training video which turned out to be an explicit version of the song 'F* * * You,' which was laced with profanity[;]" discussed sexually "fisting" the waitress at a resort during a work function and wondering "what it would be like if god was fisting the office manager?[;]" *Id*. at 1142.  A supervisory employee and administrator told plaintiff that she "cringes every time [the president/director] does something like that because it's a lawsuit just waiting to happen." *Id.* at 1141.  The *Thorp* plaintiff reported the abuse multiple times to his supervisors and/or human resources.  "Despite Plaintiff's many complaints, no supervisor took action on Plaintiff's behalf, other than to advise Plaintiff to avoid or ignore [the president/director], which was impossible to do given that [he] was Plaintiff's

supervisor." *Id*. at 1142.  The *Thorp* plaintiff also alleged that, as a result of his complaints, "his job duties were significantly escalated, requiring him to do twice the work of someone else in his position, and to perform other tasks not required of other similarly-ranked employees, as well as work on holidays that were identified as non-working holidays in the employee handbook, and, in addition, his previously-approved time off was cancelled." *Id.* The *Thorp* court found that, because reasonable minds could differ about whether the president/director's alleged conduct was sufficiently outrageous, dismissal was not appropriate.

However, in *Loos v. Lowe's HIW, Inc.*, 796 F. Supp. 2d 1013 (D. Ariz. 2011), the plaintiff had alleged her supervisor engaged in sexual talk, made sexual gestures in her presence, and attempted to involve her in some conversations with sexual topics.  That court found the plaintiff had not alleged facts demonstrating the supervisor's conduct was "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." 796 F.Supp.2d at 1023-24 (quoting *Mintz*, 905 P.2d at 563).

Although Plaintiffs allege unfair treatment similar to that discussed in *Thorpe*, the allegations regarding the conduct of Lomeli and Davidson are much more comparable to *Loos* rather than either *Coffin* or *Thorpe*.  Further, "Arizona law is clear . . . that an employer is rarely liable for intentional infliction of emotional distress when one employee sexually harasses another."  *Craig v. M & 0 Agencies, Inc.*, 496 F.3d 1047, 1059 (9th Cir. 2007). Neither Lomeli's nor Davidson's conduct was "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  *Mintz*, 183 Ariz. at 554, 905 P.3d at 563. The Court finds dismissal of this claim to be appropriate.  As counsel stated there were no additional facts that could cure a deficiency, the Court will dismiss this claim without leave to amend.

B.  *Intentional Infliction of Emotional Distress – Discrimination Against Vivaldo*

In *Williams v. Worldwide Flight SVCS., Inc.*, 877 So. 2d 869 (Fla.Dist.Ct.App.3d. Dist. 2004), the plaintiff alleged the supervisor called the African-American employee a "nigger" and "monkey" and constantly threatening the employee with job termination for no apparent reason.  The court, applying Florida law which required "outrageous conduct," found such conduct did not rise to the level that could be reasonably regarded as so extreme and outrageous such that the plaintiff could recover damages for intentional infliction of emotional distress and determined the plaintiff had failed to state a claim upon which relief could be granted.

In *Lockamy v. Truesdale*, 182 F. Supp. 2d 26 (D.D.C. 2001), the plaintiff alleged the supervisor sabotaged and unfairly scrutinized his work, denied him the opportunity to work overtime, told him that he could not address Caucasian employees by their first names, told him that he could not speak to certain African-American employees, cursed at him, and told him that he could not use a typewriter that others in his department could use.  Applying District of Columbia law, which required extreme and outrageous conduct, the court determined the plaintiff did not allege conduct that was sufficiently extreme and outrageous to support a claim for intentional infliction of emotional distress..

In *Greene v. Trustees of Columbia University*, 234 F. Supp. 2d 368 (S.D.N.Y. 2002), the plaintiff alleged the supervisor called anAfrican-American employee "Buckwheat" and "Buck" and making other racial slurs for over one year.  Applying New York law on summary judgment, which required "extreme and outrageous conduct," the court found the conduct did not rise to the level of intentional infliction of an emotional distress claim.

Here, the allegations regarding the conduct of Lomeli do not rise to the level of the conduct discussed in *Williams*, *Lockamy*, or *Greene*.  As sexual harassment rarely warrants a claim for intentional infliction of emotional distress under Arizona law, the Court finds the conduct alleged here for racial and/or national origin discrimination is not "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Mintz*, 183

1   Ariz. at 554, 905 P.3d at 563.  The Court finds dismissal of this claim to be appropriate.

2   Again, as counsel stated there were no additional facts that could cure a deficiency, the

3   Court will dismiss this claim without leave to amend.

4

5   C.  *Intentional Infliction of Emotional Distress – Training by and Response by Freightliner*

6          Although the *Loos* court concluded the plaintiff had not alleged facts demonstrating

7   the supervisor's alleged conduct was outrageous and extreme such that a it supported a

8   claim of intentional infliction of emotional distress, the court also discussed whether the

9   employer's conduct in failing to address the problem sufficiently stated a claim of

10  intentional infliction of emotional distress.  That court stated, "The [*Ford v. Revlon, Inc.*,

11  153 Ariz. 38, 734 P.2d 580 (Ariz. 1987)] court found that the corporate defendant's repeated,

12  ongoing failure to take any action to stop the sexual assaults and harassment committed by

13  its supervisory employee constituted intentional infliction of emotional distress. *Loos*, 796

14  F.Supp.2d at 1024 (citing *Ford*, 734 P.2d at 586).  The *Ford* Court determined that Revlon's

15  conduct could be characterized as extreme and outrageous because the plaintiff had made

16  numerous managers aware of her supervisor's conduct, both within the policies of the

17  company and without, to bring the harassment to Revlon's attention.  *Id*. at 585. Although

18  Revlon had actual knowledge the supervisor had "subjected Ford to physical assaults, vulgar

19  remarks, that Ford continued to feel threatened by Braun, and that Ford was emotionally

20  distraught, all of which led to a manifestation of physical problems[,]" the supervisor was

21  not confronted for nine months and was not censured for another three months.  *Id*. at 585-

22  86; *see also Craig*, 196 F.3d at 1059 ("Liability for the employer typically attaches only

23  when a company utterly fails to investigate or remedy the situation.").

24          Seller Defendants argue that Plaintiffs allege Freightliner addressed the conduct of

25  Lomeli and Davidson. Motion to Dismiss (Doc. 14), p. 9.  Indeed, Plaintiffs alleged that

26  "Freightliner failed to address such issues until Morgan demanded, through counsel, that

27  Freightliner remedy the situation."  Complaint (Doc. 1), ¶ 68.  Plaintiffs' allegation means

28  that Freightliner did not address the conduct because of Morgan's complaints; rather, it was

only when legal counsel intervened that Freightliner addressed the complaints.  The Court cannot ascertain from the allegations how long of a delay occurred prior to Freightliner taking any action.   In other words, Plaintiffs do not include any allegation that an unreasonable delay occurred.

Regarding the allegations as to Vivaldo, Vivaldo alleges the unfair treatment, harassment, and employment termination caused emotional distress.  This, in and of itself, does not constitute extreme and outrageous conduct.  However, the Court also considers whether these allegations in conjunction with the allegations that Freightliner did not provide any training as to employee conduct, in reference to both Morgan and Vivaldo, sufficiently alleges intentional infliction of emotional distress.  However, as there are no allegations as to how long of a delay occurred before Freightliner rectified the problems, the Court finds Plaintiffs have not stated sufficient facts to make the intentional infliction of emotional distress claims plausible.  Dismissal of the intentional infliction of emotional distress claims based on the lack of training and the response of Freightliner is appropriate. Further, the Court will dismiss this claim without leave to amend as counsel stated there were no additional facts that could cure a deficiency.

VII.  *Requested Dismissal of the Cuzicks, the Lunds, FSWAZ, FAZP, and FAZF*

The parties disagree whether the individually named Defendants may be liable. Plaintiffs assert the Complaint acknowledges they lack sufficient information to determine which Defendants may be liable for damages.

The Court recognizes Arizona law provides as follows:

Liability to third parties

> Except as provided in this chapter, a member, manager, employee, officer or agent of a limited liability company is not liable, solely by reason of being a member, manager, employee, officer or agent, for the debts, obligations and liabilities of the limited liability company whether arising in contract or tort, under a judgment, decree or order of a court or otherwise.

A.R.S. § 29-651 (footnote omitted).

A.  *Substantive Claims Against Individual Defendants*

Defendants argue Plaintiffs have not made any substantive allegations against the Cuzicks or the Lunds. Defendants assert that a complaint that merely tenders "naked assertions devoid of further factual enhancement" fails to show that the pleader is entitled to relief.  *Iqbal*, 556 U.S. at 678 (brackets and quotation marks omitted).

As there are no direct allegations as to the Cuzicks, the Lunds, FSWAZ, FAZP, and FAZF and Arizona law prohibits liability solely on the status of possible defendants, there is no basis for liability.  This does not present a situation where discovery may lead to liability; rather, it is the status of these Defendants under the Arizona statute that prohibits the liability.  Dismissal of the claims against these Defendants is appropriate.  However, as a more carefully drafted complaint might state a claim upon which relief may be granted, the Court will grant leave to amend as to this claim.  *Bank*, 928 F.2d at 1112.

B.  *Liability Under the FLSA and the Equal Pay Act*

Defendants assert that Count I, the FLSA claim, and Count III, the Equal Pay Act claim, can only be asserted against an employer. 29 U.S.C. §§ 206(a), 206(d), 207(a).  As Freightliner hired Plaintiffs, Defendants assert these claims against the Cuzicks and the Lunds must be dismissed.  Similarly, Redgate Defendants seek dismissal of these claims against them.

Plaintiffs assert, however, that persons acting directly or indirectly in the interest of the employer are subject to individual liability under the FLSA.  29 U.S.C. § 203; *Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009).  However, the Complaint does not allege any individual Defendant that may have acted directly or indirectly such that the imposition of liability would be appropriate.  For example, in *Boucher* the plaintiff had alleged individual defendants handled employment matters, had responsibility for financial matters, and had control of the plaintiff's employment, among other things.  *Id*. at 1091.  Although no similar direct or indirect actions are alleged in this case, Plaintiffs argue that they have alleged sufficient facts to state claims for relief that are plausible.  *Twombly*, 550 U.S. at 570.  The

1   Court disagrees.  Plaintiffs' claims merely rise to speculation, with a possibility that
2   discovery could provide a basis for a claim.  As pointed out by Defendants, Plaintiffs have
3   not even alleged the Cuzicks or the Lunds acted in the interests of the employer.  This fails
4   to state a claim upon which relief may be granted under *Twombly*.  The Court will dismiss
5   this claim with leave to amend.

6          Plaintiffs have not disputed Defendants' assertion that actions under the Equal Pay
7   Act must be asserted against an employer.  These claims will be dismissed against the
8   Cuzicks and the Lunds.  Additionally, as Redgate Defendants have joined in Seller
9   Defendants' Motion to Dismiss, dismissal of Redgate Arizona, LLC, and Redgate Partners,
10  LLC, for the same reason is appropriate.  The Court will dismiss with leave to amend these
11  claims against these parties.

12

13  C. *Liability Under State Wage Laws*

14         Defendants assert the wage claims may only be asserted against an employer.  *See*
15  A.R.S. § 23-355 (providing an "employee may recover in a civil action against an
16  employer") and § 23-350(3) (defining employer); A.R.S. § 23-364(G) and ("employer" can
17  be required to pay wages owed to employee) and § 23-362(B) (defining employer).
18  Therefore, Defendants asserts that, since Freightliner was Plaintiffs' employer, the state law
19  wage claims fails against individual Defendants.  Similarly, Redgate Defendants seek
20  dismissal of these claims against them.

21         Plaintiffs assert that, under Arizona law, an employer may include "any individual,
22  partnership, association, joint stock company, trust or corporation…employing any
23  person[,]" A.R.S. § 23-350(3), or "any corporation, proprietorship, partnership, joint venture,
24  limited liability company, trust, association, political subdivision of the state, individual or
25  other entity acting directly or indirectly in the interest of an employer in relation to an
26  employee . . ."  A.R.S. § 23-362(B).  However, Plaintiffs have not alleged any facts that any
27  individual defendants acted either directly or indirectly in the interests of Freightliner.
28  Again, Plaintiffs's claim is speculative and dismissal is appropriate.  The Court will dismiss

1    this claim against these parties with leave to amend.

2

3    D.  *Liability for State Federal Anti-Discrimination Claims*

4         Similarly, Defendants assert the anti-discrimination claims may not be asserted

5    against individual Defendants.  An individual cannot be held personally liable for a violation

6    of Title VII or the ACRA.  *See Walsh v. Nevada Dep 't of Human Res.*, 471 F.3d 1033, 1038

7    (9th Cir. 2006); *De La Torre v. Merck Enters.*, Inc., 540 F. Supp. 2d 1066, 1079 n. 10 (D.

8    Ariz. 2008); *Ransom v. State of Arizona Bd. of Regents*, 983 F. Supp. 895, 904 (D. Ariz.

9    1997).  Therefore, Defendants assert the anti-discrimination claims in Count II must be

10   dismissed against the individual Defendants

11        Further, individual liability is prohibited under the Age Discrimination in

12   Employment Act ("ADEA"), asserted in Count IV.  *Miller v. Maxwell's Int'l Inc.*, 991 F.2d

13   583, 588-89 (9th Cir. 1993) (the ruling "that individual defendants cannot be held liable for

14   damages under Title VII . . . is applicable to suits under the ADEA.").

15        The Ninth Circuit has "consistently held that Title VII does not provide a cause of

16   action for damages against supervisors or fellow employees."  *Holly D. v. California Inst.*

17   *of Tech.*, 339 F.3d 1158, 1179 (9th Cir. 2003).  Indeed, the "any agent" language in the

18   definition of an employer is intended to "impose *respondeat superior* liability upon

19   employers for the acts of their agents," not upon the agents themselves.  *U.S. E.E.O.C. v.*

20   *AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1281 (7th Cir. 1995); *see also Miller*, 991 F.2d

21   at 588 ("No employer will allow supervisory or other personnel to violate Title VII when

22   the employer is liable for the Title VII violation.").  As liability is limited to the employer

23   under Title VII, the ADA, and the ADEA, dismissal of the claims without leave to amend

24   against the individual defendants is appropriate.

25        Plaintiffs do not dispute Defendants' arguments as to the ACRA.  Dismissal without

26   leave to amend of these claims (Counts II and IV) as to individual Defendants is appropriate.

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

E.  *Factual Allegations to Support Claim of Intentional Infliction of Emotional Distress Against the Cuzicks and the Lunds*

Defendants assert Plaintiffs have not alleged any facts that either the Cuzicks or the Lunds took any action against Plaintiffs or had any intention to cause emotional distress. Although Plaintiffs argue that sufficient facts have been alleged to warrant allowing the claims to proceed to discovery, Plaintiffs do not specifically address the argument that no allegations of liable conduct by either the Cuzicks or the Lunds have been made.  The lack of such allegations does not address whether there is a basis for an intentional infliction of distress claim, only whether these specific Defendants have engaged in the conduct at issue.

Moreover, to the extent the claims are against individual members of limited liability companies, Plaintiffs appear to be seeking an exception to A.R.S. § 29-651, which prohibits such individual liability.  Additionally, Plaintiffs do not cite to any authority that provides for such an exception.  Plaintiffs have not provided any basis for the Court to conclude that these claims fail, not only because the Complaint does not allege specific acts of wrongdoing, but also because the Complaint "lists [the members] as defendants solely for their association with the limited liability corporation." *Jaffe v. Empirian Prop. Mgmt., Inc.,* No. 1 CA-CV 10-0850, 2012 WL 723194, at *10 (Ariz. Ct. App. Mar. 6, 2012).

Dismissal of these claims against the Cuzicks and the Lunds without leave to amend is appropriate.

F.  *Liability of FSWAZ, FAZP, or FAZF*

Defendants assert that, just as with the individual Defendants, Plaintiffs have made no substantive allegations against FSWAZ, FAZP, or FAZF.  Specifically, because Plaintiffs have not alleged they were employed by any of these entities, these entities cannot be liable under Counts I through VI.  Further, where none of these entities are alleged to have taken any action regarding Plaintiffs, they cannot be liable under Count VII, the  intentional infliction of emotional distress claim.

Dismissal of the claims against FSWAZ, FAZP, and FAZF with leave to amend is

1    appropriate.

2

3    VIII.   *Requested Dismissal of Redgate Arizona and Redgate Partners*

4              Redgate Defendants assert Plaintiffs have made no allegation of a direct claim against

5    Redgate Defendants.  Further, Redgate Defendants assert that any attempt to state a claim

6    for successor liability of Redgate Defendants fails because Plaintiffs have not alleged

7    Redgate Defendants had notice of the potential claims and have not alleged that Seller

8    Defendants are incapable of providing adequate relief for conduct occurring while Seller

9    Defendants operated Freightliner. of Arizona.   As pointed out by Redgate Defendants,

10   successor liability requires:

11             (1) the continuity of operations and workforce of the successor and predecessor
             employers; (2) the notice to the successor employer of its predecessor's legal
12           obligation; and (3) the ability of the predecessor to provide adequate relief directly.

13   *Bates v. Pacific Maritime Ass'n*, 744 F.2d 705, 709-10 (9th Cir. 1984).  The Supreme Court

14   has stated that, with notice, the "potential liability . . . can be reflected in the price [a buyer]

15   pays for the business."  *Golden State Bottling Co., Inc. v. NLRB*, 414 U.S. 168, 185 (1973).

16   However, the Complaint does not allege Redgate Defendants had notice of any legal

17   obligation to Plaintiffs.  Similarly, the Complaint does not allege Seller Defendants cannot

18   provide adequate relief.

19             Plaintiffs assert, however, that federal courts have developed a common-law doctrine

20   of successorship liability in employment law cases that "provides an exception from the

21   general rule that a purchaser of assets does not acquire a seller's liabilities." *Chi. Truck*

22   *Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Tasemkin, Inc.*, 59

23   F.3d 48, 49 (7th Cir.1995).   Plaintiffs assert successorship doctrine extends to legal

24   obligations arising under the National Labor Relations Act ("NLRA"), the Fair Labor

25   Standards Act ("FLSA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and the

26   Family and Medical Leave Act ("FMLA"), among others.  *See e.g., Fall River Dyeing &*

27   *Finishing Corp. v. NLRB*, 482 U.S. 27, (1987) (NLRA); *Steinbach v. Hubbard*, 51 F.3d 843

28   (9th Cir. 1995) (FLSA); *Bates v. Pac. Maritime Ass'n*, 744 F.2d 705 (9th Cir. 1984) (Title

VII); *Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 780–81 (9th Cir. 2010) (FMLA). Because the origins of successor liability are equitable, fairness is a prime consideration in its application. *Criswell v. Delta Air Lines, Inc.*, 868 F.2d 1093, 1094 (9th Cir. 1989). The successorship inquiry in the labor-law context is much broader. *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 182 n. 5 (1973). "The refusal to [adhere to the strict corporate- law definition] is attributable to the fact that, so long as there is a continuity in the employing industry, the public policies underlying the doctrine will be served by its broad application." *Id.* (internal quotation marks omitted). Plaintiffs assert Defendants should not be allowed to escape liability and this Court should allow Plaintiffs to show, after discovery, that each Defendant is liable as alleged.

However, as pointed out by Redgate Defendants, the equity concerns discussed by Plaintiffs are not at issue in this case where Freightliner is still in business, as opposed to going out of business or declaring bankruptcy as in the cases cited by Plaintiffs. Because additional allegations may provide a basis for liability, dismissal with leave to amend is appropriate.

IX. *Amended Complaint*

The Court having determined that dismissal with leave to amend is appropriate as to specified claims and specified Defendants, the Court will afford Plaintiffs an opportunity to submit an amended complaint.

Accordingly, IT IS ORDERED:

1.       The Motion to Dismiss (Doc. 14) is GRANTED IN PART AND DENIED IN PART.

2.       The Motion to Dismiss (Doc. 15) is GRANTED IN PART AND DENIED IN PART.

3.       The request to dismiss Count I, the FLSA claim, is DENIED WITH LEAVE TO RESUBMIT.

1    4.    Counts II, V, IV, and VII, to the extent they relate to the color discrimination
2  claims, are DISMISSED WITHOUT LEAVE TO AMEND.

3    5.    The request to dismiss Counts V and VI, the A.R.S. § 23-355 and minimum
4  wage claims, as they relate to the FLSA claim, is DENIED WITH LEAVE TO RESUBMIT.

5    6.    Counts V and VI, the A.R.S. § 23-355 and minimum wage claims, to the
6  extent they are not related to the FLSA claim, are DISMISSED WITH LEAVE TO
7  AMEND.

8    7.    Count VII, as it relates to the intentional infliction of emotional distress
9  claims, is DISMISSED WITHOUT LEAVE TO AMEND.

10    8.    The claims against FSWAZ, Ltd.; FAZP, Inc.; FAZF, Inc.; Danny R. Cuzick
11  and Jane Doe Cuzick; and Theril H. Lund and Jane Doe Lund; Redgate Arizona, LLC, and
12  Redgate Partners, LLC dba Velocity Vehicle Group, are DISMISSED WITH LEAVE TO
13  AMEND.    However, the federal and state anti-discrimination claims against these
14  Defendants are DISMISSED WITHOUT LEAVE TO AMEND.

15    9.    FSWAZ, Ltd.; FAZP, Inc.; FAZF, Inc.; Danny R. Cuzick and Jane Doe
16  Cuzick; and Theril H. Lund and Jane Doe Lund; Redgate Arizona, LLC, and Redgate
17  Partners, LLC dba Velocity Vehicle Group, are DISMISSED from this action, subject to
18  claims for which relief may granted being alleged against them in an amended complaint.

19    10.    Plaintiffs shall file any amended complaint within 20 days of the date of this
20  Order.

21    DATED this 2nd day of June, 2017.

22

23

24    _____
      Cindy K. Jorgenson
25    United States District Judge

26

27

28